# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:20-mc-00025 |
| Petitioner, | |
| v. | |
| 3M COMPANY, | |
| Respondent. | |

## UNITED STATES OF AMERICA'S PETITION TO QUASH SUBPOENA

Petitioner the United States of America respectfully petitions the Court to quash the amended subpoena issued by Respondent 3M Company ("3M") for the deposition of Dr. William J. Murphy, an employee of the United States Centers for Disease Control and Prevention (the "CDC").  The amended subpoena seeks to compel Dr. Murphy to be deposed on September 16, 2020.

A memorandum in support of this Motion follows.

Respectfully submitted,

DAVID M. DEVILLERS
United States Attorney


 s/ Matthew J. Horwitz
MATTHEW J. HORWITZ (0082381)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513)684-3711
Email: Matthew.Horwitz@usdoj.gov

**MEMORANDUM IN SUPPORT**

I.      **INTRODUCTION**

The CDC files this Petition to quash a subpoena by 3M for deposition testimony from a CDC scientist, Dr. William J. Murphy, in litigation in which neither the United States nor the CDC is a party. As required by federal law, 3M previously submitted an administrative request for Dr. Murphy's testimony and associated documents. The CDC granted, in part, 3M's request. The CDC denied 3M's request for a deposition of Dr. Murphy, but produced a detailed declaration from Dr. Murphy with related agency records. Nonetheless, 3M has served a subpoena on Dr. Murphy seeking the same testimony that it sought, and was denied, in its administrative request. In so doing, 3M ignores both the intervening denial of its government contractor defense, which was one of the principal reasons proffered in its administrative request for Dr. Murphy's deposition, and the fact that the CDC has provided substantial responsive information to 3M by declaration. CDC has objected in writing to the subpoena, and it now files this Petition requesting the Court quash the subpoena.

3M's subpoena for Dr. Murphy's testimony should be quashed for several reasons. First, the Court may only compel testimony by federal officials when it finds that an agency's denial of such testimony is arbitrary and capricious. Here, CDC denied the request for Dr. Murphy's testimony after performing a reasonable and thorough analysis of 3M's request. CDC's denial was neither arbitrary nor capricious. Second, the requested deposition would be needlessly duplicative and

2

cumulative, given the declaration and records previously produced by the CDC. Third, and finally, the requested deposition would be unduly burdensome to the CDC, both individually and cumulatively. Dr. Murphy is actively engaged in the CDC's efforts to address the COVID-19 pandemic, and Dr. Murphy should not be compelled to set aside those important duties to prepare for and attend a deposition for litigation in which neither the United States nor the CDC are parties.

## II. BACKGROUND

### A. Applicable *Touhy* Regulations

The federal government authorizes the head of every Executive Branch agency to "prescribe regulations for the government of his department, the conduct of its employees, the distribution of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301; *see also, United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951). Such regulations allow federal agencies to determine "whether subpoenas . . . will be willingly obeyed or challenged," thereby avoiding "the possibilities of harm from unrestricted disclosure in court." *Touhy*, 340 U.S. at 468. These regulations impose a binding legal duty on federal employees. *Frank v. U.S. Food and Drug Admin.*, 998 F.Supp.2d 596, 602 (E.D. Mich. 2014) (citing *Boron Oil Co. v. Downie*, 873 F.2d 67, 69–70 (4th Cir. 1989)).

The CDC is a component of the United States Department of Health and Human Services ("HHS"). Pursuant to HHS regulations, current and former HHS employees are not authorized to participate, give depositions or trial testimony, or

provide consultation regarding information acquired in the performance of their official duties in private litigation or other proceedings in which the United States is not a party, absent authorization by the agency. 45 C.F.R. § 2.3. To request testimony from an HHS employee, a litigant must submit a request to the agency in writing, state the nature of the requested testimony, explain why the testimony is unavailable from any other source, and explain why the testimony would be in the interest of, and promote the objectives of, the agency. 45 C.F.R. § 2.4. HHS, however, may only authorize an employee to testify in private litigation when "compliance with the request would promote the objectives of the Department." 45 C.F.R. § 2.3. This policy exists to minimize the disruption of official duties and to further HHS's interest in maintaining impartiality in disputes between private litigants. 45 C.F.R. § 2.1.

### B. Procedural History

3M is a defendant in multi-district litigation pending in the Northern District of Florida related to the safety of 3M's products. *See In re 3M Combat Arms Earplug Products Liability Litigation*, Case No. 3:19-md-2885 (N.D. Fla.). The United States is not a party to that litigation, nor is the CDC or HHS.

In connection with that MDL, on February 6, 2020, 3M submitted a *Touhy* request to CDC seeking to interview and depose Dr. Murphy and another CDC employee not at issue here.[1] (Exhibit 1, Request Letter, at 1.) 3M asserted that a deposition of Dr. Murphy was necessary because he was "involved in the testing of

---

[1] The February 6, 2020 *Touhy* request was 3M's second such request. 3M's first *Touhy* request is not at issue here.

the Combat Arms Earplugs Version 2 ("CAEv2")," one of the products at issue in the MDL action. (*Id.*) 3M sought to depose Dr. Murphy on the following topics: (1) test procedures, test protocols, and test results related to testing on the CAEv2, including an overview of the tests Dr. Murphy ran, how Dr. Murphy fit the CAEv2 during his testing, how Dr. Murphy determined the appropriate procedure for fitting the CAEv2 during testing, whether Dr. Murphy was able to maintain an appropriate fit, the results of Dr. Murphy's testing, and the attenuation achieving under various testing and fit conditions; and (2) correspondence or communications regarding the CAEv2 by Dr. Murphy and others. (*Id.* at 4.) 3M asserted this information was needed to show that the CAEv2 is not defective and that the government was on notice of CAEv2's performance capabilities and limitations, which 3M asserted to be relevant to its government contractor defense. (*Id.*)

3M asserted that public information was not sufficient for its purposes and a deposition was necessary because public information does not describe "how CAEv2 was 'fit' during testing, whether the flanges on the opposite end of the earplug were folded back during testing, and whether Mr. (sic) Murphy had difficulty achieving or maintaining an adequate fit during his testing." (*Id.* at 5.) 3M further asserted that a deposition would further the agency's interest in "being a good federal citizen" and would "aid the Court's desire that the parties complete government discovery related to the government contractor defense in a timely manner." (*Id.*)

The CDC responded to 3M's *Touhy* request on July 23, 2020. (Exhibit 2, Response Letter, at 1.) The CDC denied 3M's request for a deposition of Dr.

5

Murphy, but agreed to provide a declaration from Dr. Murphy regarding the information requested by 3M, along with various responsive documents. (*Id.* at 2.) The CDC explained that providing requested information by declaration rather than deposition was "less burdensome . . ., more time efficient, and will avoid significant interruption of Dr. Murphy's official duties as a federal government employee." (*Id.*) The CDC also noted that a declaration was particularly appropriate given Dr. Murphy's "minor role in this matter" and "the ever-present demands that have been placed on [the National Institute for Occupational Safety and Health ("NIOSH")], CDC, and the Department in responding to the ongoing Coronavirus Disease 2019 pandemic." (*Id.*) Moreover, the CDC did not authorize Dr. Murphy to address testing that was not published or that did not concern the CAEv2 product. (*Id.*)

Dr. Murphy's declaration was provided by CDC to 3M contemporaneously with CDC's response letter. (Exhibit 3, Declaration of William J. Murphy.) Dr. Murphy's declaration set forth his background as a research physicist with NIOSH, as well as his duties as a team leader for the Hearing Loss Prevention Research Team. (*Id.* at 1.) Dr. Murphy's declaration also described his testing procedures regarding the CAEv2, the fitting of the CAEv2 during testing, test results, and the attenuation results achieved with the CAEv2 during testing. (*Id.* at 2-6.) Dr. Murphy's declaration attached and explained his test reports, noting attenuation achieved during his testing by referencing specific portions of the testing reports. Dr. Murphy's declaration also explained in detail how the CAEv2 was fit during

6

testing. (*Id*. at 4-5.) Finally, in response to 3M's request for communications regarding CAEv2 testing, Dr. Murphy's declaration attached all responsive communications that Dr. Murphy could locate concerning CAEv2 and confirmed that he had no independent recollection of the communications or the circumstances surrounding the communications. (*Id*. at 6.)

On August 25, 2020, 3M issued a subpoena to Dr. Murphy for a deposition to be held on September 9, 2020. The following day, however, 3M issued an amended subpoena for Dr. Murphy. (Exhibit 4, Amended Subpoena.) The amended subpoena commanded Dr. Murphy to appear for deposition on September 16, 2020 in Cincinnati, Ohio or, alternatively, by remote means. (*Id*. at 1.) The amended subpoena stated that the topics for deposition would be the same topics as identified in 3M's written *Touhy* request. (*Id*.) Indeed, rather than separately set forth the topics for deposition, 3M's subpoena simply attaches and incorporates its written *Touhy* request. (*Id*.)

On September 9, 2020, CDC objected in writing to the subpoena. (Exhibit 5, Rule 45 Objection Letter.)

### III. ARGUMENT

#### A. **The Court Should Not Permit the Deposition of Dr. Murphy Unless it Determines that the CDC's Partial Denial of 3M's *Touhy* Request was Arbitrary or Capricious**.

It is well-established that federal agencies have discretion to restrict testimony from or production of documents by their subordinates through properly promulgated regulations. *Touhy*, 340 U.S. at 468; *Boron Oil*, 873 F.2d 67, 69-70

7

(4th Cir. 1989) ("*Touhy* is part of an unbroken line of authority which directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations."); *State of Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992) ("As the Supreme Court has long held, such regulations unquestionably give [federal] employees the authority, when so ordered by supervisors, to refuse to comply with a subpoena ordering disclosure of confidential files when the United States is not a party to a legal action."). Such regulations ensure that federal employees' official time is spent on federal business and that agencies remain impartial in private litigation. *See, e.g., United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981) (holding that federal agencies have "a legitimate interest in regulating access to government information contained in files or obtained by its employees during the scope of their official duties."); *Frank*, 998 F.Supp.2d at 602 ("this compromise between public and private interests is necessary to conserve agency resources and to prevent an agency from becoming embroiled in private litigation") (internal quotation and citation omitted).

If a litigant's *Touhy* request is denied, the litigant may challenge that decision only by seeking a ruling under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, that the agency's decision was arbitrary and capricious. *Rimmer v. Holder*, 700 F.3d 246, 262-63 (6th Cir. 2012) (plaintiff seeking review of FOIA denial "*could* have obtained review under the APA rather than FOIA if . . . he had pursued a *Touhy* request . . . ") (emphasis added); *see also, e.g., United States v.*

8

*Threat*, No. 09-20523, 2011 WL 5865076, at *1 (E.D. Mich. Nov. 22, 2011) ("if [d]efendant is dissatisfied with the DEA's response to his *Touhy* request, his remedy is an action against the DEA pursuant to the Administrative Procedure Act, and not pursuant to a motion to compel."); *Metcalfe v. Ultimate Sys., Ltd.*, 346 F. Supp. 2d 950, 954 (N.D. Ohio 2004) (the requesting party "is not without a remedy: they may file a collateral action seeking review of the agency's refusal to release the records in federal court under the Administrative Procedure Act . . . "); *OhioHealth Corp. v. U.S. Dep't of Veterans Affairs*, No. 2:14-cv-292, 2014 WL 4660092, at *3 (S.D. Ohio Sept. 17, 2014) (finding that "[i]n reviewing a federal agency's decision pursuant to its promulgated *Touhy* regulations under the Administrative Procedure Act, the Court's role is 'narrow' . . . ").

The Sixth Circuit has not directly addressed whether challenges arising from the denial of a *Touhy* request are treated differently based on whether the subpoena for documents or testimony is issued by a federal or state court, and district courts have split on this issue. Compare *U.S. v. Threat*, 2011 WL 5865076, *1 (E.D. Mich. Nov. 22, 2011) with *Gischel v. University of Cincinnati*, 2018 WL 9945170, *3 (S.D. Ohio June 26, 2018). Although *Rimmer* does not directly resolve this issue, the Sixth Circuit held that APA standards would have governed the denial of a *Touhy* request in that matter and cited decisions in which the applicable subpoenas were issued from both federal and state courts. 700 F.3d at 263. The *Rimmer* decision relies, for example, on *In re Boeh*, 25 F.3d 761, 767 (9th Cir. 1994), which held that "an APA claim was the proper method for challenging an agency's refusal to produce

9

information" after agency denial of a *Touhy* request arising from a federal-court issued subpoena. Moreover, the rationale underlying the requirement that a litigant proceed in such circumstances under the APA—that the United States is entitled to sovereign immunity and may not be sued without its consent—applies with equal force to state and federal subpoenas. Finally, no such ambiguity exists in the Eleventh Circuit, where the MDL action is pending. In the Eleventh Circuit, a litigant may only enforce a subpoena following denial of their *Touhy* request if the district court determines that the agency's decision regarding the *Touhy* request was arbitrary and capricious under the APA. *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).

      **B.    The CDC's Partial Denial of 3M's *Touhy* Request was not Arbitrary or Capricious.**

An agency's decision is arbitrary and capricious only if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. Nat'l Park Serv.*, 463 U.S. 29, 43 (1983). In assessing whether agency action is arbitrary and capricious, a court's review should be "narrow," and it should not substitute the judgment of the agency with its own preference. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989). Rather, the Court's task is to determine whether the agency's decision is "within the bounds of reasoned decision making." *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council*, 462 U.S.

10

87, 105 (1983); *Hazelhurst v. Centers for Disease Control*, 2017 WL 3037808, *6 (W.D. Tenn. July 18, 2017) (holding that CDC's denial of *Touhy* request was not arbitrary and capricious because CDC Director "offered detailed and case specific reasons for declining Plaintiff's request . . . .").

Here, 3M's subpoena seeking Dr. Murphy's testimony is nothing more than an attempt to compel the deposition of Dr. Murphy that it previously sought in its *Touhy* request and that CDC previously denied. Yet, the CDC thoroughly considered 3M's *Touhy* request and provided a detailed and case-specific response granting the request in part and denying the request in part. As described above, in response to 3M's Request, CDC produced a detailed declaration from Dr. Murphy disclosing: (1) his testing procedures regarding the CAEv2, (2) how the CAEv2 was fit during testing, (3) test results regarding the CAEv2, and (4) the attenuation achieved with the CAEv2 during testing. (Ex. 3, at 2-6.) Dr. Murphy's declaration also included all responsive communications that Dr. Murphy could locate concerning CAEv2. (*Id*. at 6.)

The only substantive limitation placed on Dr. Murphy's response to the request for testimony was that Dr. Murphy was not authorized to address testing that did not concern CAEv2 or testing that was not published. This limitation was not arbitrary or capricious. Testing unrelated to the CAEv2 was outside the scope of 3M's request and is irrelevant. Similarly, unpublished testing data is not representative of an official CDC position or conclusion, and the CDC properly

11

determined that it would be inappropriate for Dr. Murphy to offer testimony concerning such testing.

The CDC's approval of a response by declaration, rather than by deposition testimony, was also not arbitrary or capricious. As explained by the CDC in its response to 3M, the CDC's approval of a declaration from Dr. Murphy reflected his limited role regarding the CAEv2 product and avoided the substantial burden of a deposition on Dr. Murphy and the CDC. The CDC is actively engaged in responding to the ongoing COVID-19 pandemic, and Dr. Murphy is temporarily assigned to a team handling COVID-19 responsibilities relating to worker safety and health. (Ex. 5.) Compelling Dr. Murphy to sit for deposition would require Dr. Murphy to set aside his important duties to prepare for and attend a deposition covering the same topics for which he has already provided a sworn declaration. Such a deposition is duplicative and cumulative, offers no benefit to the agency, and would only serve to substantially burden Dr. Murphy's and the CDC's work.

It is also notable that one of 3M's primary assertions in its *Touhy* request was that the requested information was needed to support its government contractor defense. (Ex. 1, at 4.) This defense, however, was rejected by the MDL Court on summary judgment. (N.D. Fla Case No. 3:19-md-2885, Order, ECF No. 1280.) 3M has not limited its request for testimony or offered any explanation for why it still seeks testimony from Dr. Murphy purportedly on that issue.

Finally, in the unlikely event that the Court determines that the CDC's response to the *Touhy* request for testimony from Dr. Murphy was, in some manner,

12

arbitrary and capricious, "the proper remedy is to remand [the] issue back to the [agency] for further investigation and explanation," rather than to compel Dr. Murphy to attend a deposition. *OhioHealth Corp.*, 2014 WL 4660092, at *7 (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

### C. The Amended Subpoena Should be Quashed Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure.

Rule 45(d)(3) of the Federal Rules of Civil Procedure requires the Court to quash or modify a subpoena that subjects a nonparty to an undue burden. Although Rule 45(d)(3) does not expressly include irrelevance as a basis for quashing a subpoena, "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics*, LLC, 275 F.R.D. 251, 253 (S.D. Ohio 2011). Moreover, "[w]hen a nonparty challenges a subpoena on grounds that the request is over-burdensome, the party seeking the discovery must establish that the information sought is relevant." *Doe v. Ohio State University*, 2018 WL 1373868, *2 (S.D. Ohio Mar. 19, 2018). "Courts will balance the need for discovery against the burden imposed on the person ordered to produce documents, and that person's status as a nonparty is a factor weighing against disclosure." *Id.* (citing *Katz v. Batavia Marine and Sporting Supplies, Inc.*, 984 F.2d 422, 424 (6th Cir. 1993)).

Here, the burden that a deposition would impose on the CDC and Dr. Murphy substantially outweighs any potential benefit to 3M. As discussed above, Dr. Murphy is presently engaged in important work relating to the ongoing COVID-19 pandemic, and a deposition would substantially disrupt that work. Moreover, it

13

is appropriate for the Court to consider the burden imposed on the federal government not only by this single request for deposition, but also the cumulative effect of depositions of the sort sought by 3M here. *See Hazlehurst*, 2017 WL 3037808, at *8 (CDC properly considered the "cumulative impact of allowing employees . . . to testify in private litigation" in denying *Touhy* request). Indeed, if each study, test, or report prepared by the CDC rendered its scientists proper subjects for deposition in private litigation relating to the subject matter of the study, test, or report, CDC personnel could be required to expend increasingly substantial portions of their time participating in private litigation rather than attending to their assigned duties.

In contrast to this heavy burden, the deposition seeks information that is irrelevant, cumulative, and duplicative. As discussed above, any information sought for purposes of bolstering 3M's government contractor defense is now irrelevant, as that defense has been rejected by the MDL Court. Moreover, any deposition of Dr. Murphy would be unnecessarily duplicative and cumulative, given the detailed declaration provided by Dr. Murphy in this matter, which addressed all—or substantially all—of 3M's topics of inquiry outlined in its *Touhy* request and amended subpoena (with the exception of information concerning any unpublished testing that may have been conducted by Dr. Murphy).

3M recently asserted in the MDL litigation that a deposition of Dr. Murphy is necessary to ask Dr. Murphy "detailed follow up questions about his published

14

studies." (N.D. Fla Case No. 3:19-md-2885, Motion, ECF No. 1317.)[2] As examples, 3M identified a desire to ask Dr. Murphy why his studies were conducted, who requested the studies, and why the particular type of study was conducted, as opposed to other types of testing. (*Id*. at Page 3-4.) None of these questions, however, were posed by 3M in its *Touhy* request and none is identified in the amended subpoena (which simply refers back to 3M's *Touhy* request). The Court should not compel Dr. Murphy to testify at deposition because his written declaration failed to answer questions that 3M never asked.[3] Such a ruling would allow parties to avoid the consequences of making incomplete *Touhy* requests, and would vastly expand the circumstances in which agency personnel are subject to deposition.

## IV. CONCLUSION

For the foregoing reasons, the CDC respectfully requests that the Court issue an Order quashing the Amended Subpoena.

(Signature on following page)

---

[2] 3M's motion regarding Dr. Murphy was denied by the Court as moot. (N.D. Fla Case No. 3:19-md-2885, Order, ECF No. 1358.)

[3] In contrast, 3M's Touhy request specifically requested information for how the CAEv2 product was fit during testing, and Dr. Murphy's declaration provided a specific and detailed explanation.

15

        Respectfully submitted,

        DAVID M. DEVILLERS
        United States Attorney

        s/ Matthew J. Horwitz
        MATTHEW J. HORWITZ (0082381)
        Assistant United States Attorney
        221 East Fourth Street, Suite 400
        Cincinnati, Ohio 45202
        Office: (513)684-3711
        Fax: (513)684-6972
        Email: Matthew.Horwitz@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of September, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which serves copies to all parties of record.  In addition, I served a copy of the foregoing by electronic mail to:

Ashley Neglia, Esq.
Kirkland & Ellis LLP
555 S.Flower Street
Los Angelos, CA 90071
(213) 680-8114
Ashley.Neglia@kirkland.com

Finally, to the extent that Respondent will not consent to service by electronic mail, the United States will promptly serve a copy of the forgoing by certified mail to Respondent and/or Respondent's counsel.

        s/Matthew J. Horwitz
        MATTHEW J. HORWITZ (0082381)
        Assistant United States Attorney